FILED
Clerk
District Court

FEB -1 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  Law Office of G. Anthony Long
   P.O. Box 504970
2  Saipan, MP 96950
   Tel.: (670) 235-4802
3  Fax: (670) 235-4801

4  Attorney for Defendant

5           THE UNITED STATES DISTRICT COURT
                NORTHERN MARIANA ISLANDS
6

7

8
                                        )  Criminal Case No. 03-0019
9  UNITED STATES OF AMERICA             )
                                        )  DEFENDANT'S MOTION TO DISCLOSE
10          Plaintiff,                  )  IDENTITY OF CONFIDENTIAL
                                        )  INFORMANT
11     vs.                              )
                                        )
12 VINCENT D. CABRERA,                  )
                                        )
13          Defendant.                  )
                                        )
14

15

16

17    Defendant Vincent D. Cabrera, through undersigned counsel, hereby files this Motion to Disclose

18 Identity of the Confidential Informant. Defendant is entitled to disclosure of the identity of the

19 confidential informant in order to prepare his cross-examination and present a defense against these

20 Supervised Release Revocation allegations.

21

22

23                                      1

24

**I.**

**BACKGROUND**[1]

This case is before the Court on a petition by probation to revoke Mr. Cabrera's supervised release in this case. The basis for the petition is that Mr. Cabrera is alleged to have violated the term of his supervised release which states that "the defendant shall not commit any federal, state or local crime." See document #27. Probation based its petition on an arrest of Mr. Cabrera made by local authorities and on DPS investigative documents for the superior court case. According to the DPS documents:

> On September 20, 2007, a cooperating source,(CS) informed [CNMI] Detective Camacho that a male individual identified as Vincent Cabrera offered to sell him/her crystal methamphetamine aka "ice". Cabrera allegedly told the CS that "ice" was available for purchase at any time. On that same day, DPS officers and a team of DEA Task Force Officers followed the CS to Cabrera's residence in Koblerville. Officers monitored while the CS placed an order for $200 worth of "ice". Cabrera told to CS to meet him near the U.S. Post office in Chalan Kanoa. The surveillance team followed the CS to the parking lot of the Moon Night Club in Chalan Kanoa. A short time later, Cabrera was observed driving up to the CS's car. Cabrera entered the CS's car, at which time the drugs and money exchanged hands. The surveillance team observed Cabrera exit the CS's car and drive away in his personal vehicle. The CS then met the surveillance at a prearranged location and relinquished a plastic bag containing a crystalline substance."

---

[1] This background information is based upon the court file in this case as well as the discovery received to date. Defendant reserves the right to contest these facts at a later hearing.

2

1

2         As a result of that controlled- buy operation, the local government charged Mr. Cabrera with one
3 count of Trafficking of Controlled Substance and one count of Illegal Possession of Controlled
4 Substance. See Information in Criminal Case 08-0003.

5         In support of these allegations, the Government has provided two surveillance discs to Mr.
6 Cabrera, one containing an audio recorded surveillance of the snitch allegedly arranging an "ice buy" at a
7 house where Mr. Cabrera was having dinner, the second containing a video surveillance of the alleged
8 "ice buy" in the parking lot of the Moon Night Club. However, neither in the audio disc or in the
9 transcript of the audio disc provided by the Government is a drug transaction between the snitch and Mr.
10 Cabrera mentioned. Additionally in the video surveillance tape provided by the Government, not only is
11 there no footage of Mr. Cabrera "drugs and money exchanging hands" as alleged. The snitch is actually
12 seen entering a car with Mr. Cabrera and another passenger. During the time the snitch is in that car,
13 there is no audio recording occurring.

14         Although the alleged drug buy transaction took place on September 20, 2007, no attempt was
15 made by local authorities to search Mr. Cabrera for the alleged "buy money." In fact, Mr. Cabrera was
16 not even arrested in connection with these charges until three months later when the officer arrested him
17 on December 31, 2007. Mr. Cabrera is entitled to present a defense at his revocation hearing and to
18 confront the witnesses against him. In that the charges against Mr. Cabrera arise out of her alleged
19 interactions with the unidentified source, that snitch is a percipient witness to all of the crimes charged in
20 the information. And because the underlying arrest and charges were made not on what is viewed and
21 heard by DPS through surveillance but rather what was told to them by the snitch, Mr. Cabrera is entitled
22 to have the snitch's identity disclosed. This is a basic component of due process.

23
24

# II.
# ARGUMENT

## A. DISCLOSURE IS REQUIRED EVEN THOUGH THIS IS A REVOCATION PROCEEDING

The current proceeding in federal court against Mr. Cabrera is a hearing on whether or not his supervised release should be revoked. Therefore, before Mr. Cabrera can ask this court to disclose the informant's identity, Mr. Cabrera must demonstrate that he has the right to confront the informant in the first instance. Although a sixth amendment protection does not apply to supervised release revocation proceedings, Mr. Cabrera nevertheless enjoys a due process right to confront witness against him during his supervised release proceedings as the Supreme Court held over thirty–five years ago in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

"Under *Morrissey*, every release is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witness." *United States v. Comito*, 177 F. 3d 1166(9th cir. 1999). The Supreme Court defined certain minimal due process requirements for parole revocation and quickly extended those protections to probation revocation. See *Gagnon v. Scarpeli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). FedR.Crim.Pro 32.1, which applies to supervised release revocation, incorporates those same minimal due process requisites. *United States v. Martin* 984 F.2d 308, 310 (9th Cir. 1993). The factors the Court must use" include the importance of the evidence to the court's ultimate finding, the virtually complete denial of any opportunity to refute the evidence and the consequences of the court's finding." *Martin* at 311.

In this case the hearsay testimony of the snitch is important to finding the violation. Also, to not reveal the snitch and deny Mr. Cabrera the opportunity to confront him, would virtually be denying Mr.

Cabrera of any opportunity to refute the evidence against him. Finally, because this case involves allegations of possession of a controlled substance, it could possibly trigger application of a statutory mandatory minimum sentence. As noted in the argument below, there is no evidence to show that the government has good cause for denying Mr. Cabrera his right to confrontation.

Here, the Court must allow Mr. Cabrera the right to confront the evidence against him. In order to do that, the Court must allow disclosure of the snitch's identity.

### B. ROVARIO AND ITS PROGENGY REQUIRE DISCLOSURE OF THE INFORMANT

This case involves an informant. This informant is a material, percipient witness to the alleged violations. His/her identity and all *Brady*[2] / *Giglio*[3] material must be disclosed, particularly where, as here, the alleged informant may be on parole or supervised release for a felony or where the snitch can testify about the true seller of the drugs.

Disclosure of the snitch is required. In *United States v. Roviaro*, 353 U.S. 53 (1957), the U.S. Supreme Court explained that the government's privilege of withholding an informer's identity exists to further and protect the public interest in law enforcement -- but that privilege is not absolute. *See id.* at 61-62. It must give way to disclosure when the "fundamental requirements of fairness" require. *Id.* Specifically, "where the disclosure . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 61-62.

Since *Roviaro*, the Ninth Circuits and other circuit as well have specified certain factors to be considered (1) the degree of the informant's involvement in the crime, (2) the relationship between the

---

[2] *Brady v. Maryland*, 373 U.S. 83, 88, 83 S.Ct. 1194 (1963).

[3] *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972).

5

defendant's asserted defense and the informant's likely testimony; and (3) the governmental interest in nondisclosure. *United States v. Gonzalo Beltran*, 915 F. 2d 487, 489 (9th Cir. 1990) (See also *United States v. Ayala*, 643 F.2d 244, 246-47 (5th Cir. 1981), the level of involvement of the informer, the helpfulness of the informer to the defense, and where, as here, "a close relationship between the asserted defense and the informer's likely testimony favors disclosure." *Id.* at 247.)

The Ninth Circuit reaffirmed *Roviaro*'s principles in *United States v. Ramirez-Rangel*, 103 F.3d 1501 (9th Cir.1997), holding that defendants have a right to learn the identity of the government's confidential informants if they show that the information "is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause." *Id.* at 1505 (quoting *Roviaro*, 353 U.S. at 60-61). Indeed, in *United States v. Giry*, 818 F.2d 120, 130 (1st Cir. 1987), the First Circuit recognized that it "agree[d] that the appellants cannot be expected to submit a detailed proof offer regarding a witness they have been unable to interview."

In this case, the snitch had a high degree of involvement in the alleged crime. According to the police, the snitch was the individual who brought Mr. Cabrera's name to the detective's attention. Additionally he was a consumer and purchaser of methamphetamine. The first factor of the disclosure test has been satisfied.

With regard to the second factor, there is no question that the snitch qualifies as a percipient witness who played an integral role in the alleged narcotic transaction at issue and thus could provide impeachment and exculpatory evidence towards Mr. Cabrera's exoneration. In addition to the above requirements for disclosure, the Government must disclose information which will impeach the informant.

The defendant requests disclosure of any information indicating bias on the part of any informant

or cooperating witness, or which could be used to impeach him such as a prior conviction or parole status. *See Giglio v. United States*, 405 U.S. 150 (1972). Such information would also include all inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

For example, the police agents claimed that one witness was a "confidential source." Not just any person can be a confidential source. There must be paperwork that confirms that the person is operating as an informant for purposes of an investigation as opposed to committing a freelance crime.[4] This is because the snitch will be engaging in criminal activity. In exchange for his cooperation with police, the snitch will not be prosecuted because he is working as an agent of the police. Defendant is entitled to this information because it in essence establishes the agreement with the police. If this information does not exist, then the police had no basis to conceal the snitch's identity and in fact affirmatively misrepresented his status to obtain the warrants against the Defendant, and that would be a basis to impeach the police, not to mention raising possible other issues.

Regardless of whether the snitch in this case was an "approved" confidential source, usually there is other tangible benefit to for his/her cooperation. The likelihood of receiving benefits becomes greater if, for example, the person is currently on parole for a serious felony. Perhaps, the police offered the snitch an agreement not to inform his parole officer that he was in violation; perhaps the police promised not to revoke his parole. Maybe the police made an agreement not file a report about alleged criminal activity or promised not to prosecute him. Maybe the police even offered him money. Consequently, the defendant seeks all supporting documentation regarding the informant's status, assignments, behavior,

---

[4] Indeed, where as here the police are using funds to buy drugs, the police must fill out extensive forms. *See, e.g.,* DPS, Criminal Investigative Bureau, Policy and Procedure Manual (CIB-SOP), at page 39-49 (laying out strict documentation requirements for use of confidential informant funds).

1 payments, promises made to the informant and the criminal records, including any arrest or allegation of
2 parole violation by the informant.
3      Finally, although there may arguably be some importance in protecting the identity of informants
4 involved in ongoing narcotics investigations, there is no evidence that disclosure would be harmful to
5 any Informant's safety or that disclosure could jeopardize ongoing and future investigations. *Gonzalo*
6 *Beltran; see also Smith v. Illinois,* 390 U.S. 129, 88 S. Ct. 748 18 L. Ed.2d 956(1958) (precluding
7 defendant accused of drugs from inquiring about informant's true name violated defendant's sixth
8 amendment right to confront witness against him where there was no showing that the inquiry would
9 have in any way endangered the witness. Under the circumstances, there is no question that the third and
10 final prong of the test has been satisfied.
11
12                                **III.**
13                             **CONCLUSION**
14      Indeed, this Court must order production of the informant. *See e.g., United States v. Bower,* 575
15 F.2d 499, 503 (5th Cir. 1978); *United States v. Montgomery,* 998 F.2d 1468, 1477 (9th Cir. 1993);
16 *Diblasio v. Keane,* 932 F.2d 1038, 1042-43 (2d Cir. 1990) (where, as here, "the appellant had actual
17 possession of the narcotics, he made delivery . . . and he "received the money," the informant should
18 have been produced and any credibility determinations "reserved for the jury as fact-finder"). The
19 government must disclose the informant's identity and location, as well as disclose the existence of any
20 other percipient witness unknown or unknowable to the defense. *See Roviaro,* 353 U.S. at 61-62. The
21 government must disclose any information derived from informants which exculpates or tends to
22 exculpate the defendant.
23
24

1   This Court should order disclosure of the following information:

2   (a) the identity and location of the confidential source;

3   (b) his prior convictions or arrests if any;

4   (c) his parole status if any;

5   (d) the DPS paperwork establishing that he is in fact a confidential source permitted to engage in
6   approved criminal activity;

7   (e) any rewards (*e.g.*, Crimestoppers), any promises even if made by the police officers, or other
8   inducements made to obtain the cooperation of the confidential source;

9   (f) production of the confidential source.

10

11  Respectfully submitted this 1st day of February, 2008.

12

13                                          Law Office of G. Anthony Long

14                                          _____/s/ *Kelley Butcher*_____
15                                          Kelley Butcher, Esq.

9